193 So.2d 249

Mrs. Gladys H. CRIMEN

v.

FIDELITY AND CASUALTY COMPANY
OF NEW YORK.

No. 48233.

Dec. 12, 1966.

Edmond R. Eberle, New Orleans, for plaintiff-appellant.

A. R. Christovich, Jr., Christovich & Kearney, New Orleans, for defendant-appellee.

HAMITER, Justice.

In this suit Mrs. Gladys H. Crimen, who was formerly employed as a saleslady for

Entringer Bakeries, Inc. (the defendant's insured), seeks workmen's compensation benefits for total and permanent disability allegedly resulting from an injury sustained during her employment on June 11, 1961 (and later aggravated) when she was lifting a heavily loaded tray from a cabinet.

The trial court found that plaintiff was suffering from a back ailment, and that her condition was caused by the accident and injury occurring as alleged by her. It determined that her disability was total for a period of 29 weeks, and that she was "permanently disabled to the extent of 30% of her physical function." Accordingly, it rendered judgment decreeing that she was entitled to $31.20 per week for a period of 29 weeks and 30% of that amount for the remainder of the 400 week period.

Both the plaintiff and the defendant appealed.

On April 4, 1966 the Court of Appeal reversed the judgment and dismissed the suit. Crimen v. Fidelity and Casualty Company of New York, 185 So.2d 369. The court, in its written opinion, recognized the undeniable fact that plaintiff was suffering from a disabling back condition. However, after reviewing the evidence, including the testimony of six doctors who had examined plaintiff, it concluded that her disability was due to an advanced state of osteoporosis or osteoarthritis (developing perhaps more rapidly in plaintiff than in the ordinary individual) and did not result from any traumatic incident. In reaching such conclusion the court noted that only one of plaintiff's expert witnesses, a Dr. Byron Unkauf, pointed to disc trouble as the cause of plaintiff's disabling condition.

(Incidentally, the record, which is now before us on certiorari as hereafter shown, reveals that Dr. Unkauf, by reason of plaintiff's history and her reactions to standard tests applied to her, entertained the opinion that she had suffered a ruptured lower disc. As a result he caused a myelogram to be made. The myelogram, he said, disclosed no obstruction to the flow of the pantopaque; but certain aspects thereof suggested difficulty in the area of the fourth and fifth lumbar discs to such an extent that, when taken in connection with her history, he felt that an exploratory laminectomy should be carried out to confirm the diagnosis and to justify the performance of whatever corrective measures might prove to be necessary. He was definitely of the opinion that plaintiff's pain was caused by one, possibly two, ruptured discs. But, as shown above, the Court of Appeal rejected this testimony, it concluding that the other expert evidence indicated that plaintiff's discomfort was due to a gradual bone deterioration having no traumatic origin.)

A rehearing was denied by the Court of Appeal on May 2, 1966.

Within thirty days from the denial of such rehearing, and before the Court of

Appeal judgment had become final, plaintiff applied here for certiorari seeking a reversal of the judgment. Alternatively, she prayed for a remand of the case to permit the introduction of additional evidence. In connection with the alternative plea it was shown that she had continued to suffer from increasing back pains to such an extent that on May 6, 1966 she consulted another neuro-surgeon, one Dr. Homer Kirgis of Ochsner Clinic in New Orleans, who diagnosed her condition as being due to a ruptured lumbar intervertebral disc; and that on May 29, 1966, Dr. Kirgis operated on her and removed such disc.

Attached to the application for certiorari is Dr. Kirgis' written report to plaintiff's attorney, it being dated May 30, 1966. Therein the doctor states that plaintiff's history and his findings "were characteristic of herniation of a lower lumbar intervertebral disc"; that he obtained the earlier myelogram which was caused to be made by Dr. Unkauf and that it also "demonstrated evidence of a ruptured disc at the fourth lumbar level"; and that plaintiff "was hospitalized and the ruptured disc at the fourth lumbar level removed on 5/29/66."

We granted certiorari, but we limited our consideration to the question of whether the case should be remanded for additional evidence as to the cause of plaintiff's disability. 249 La. 467, 187 So.2d 444.

Wade v. Calcasieu Paper Company, Inc., 229 La. 702, 86 So.2d 540, we think, is controlling of our disposition of the instant matter, the circumstances therein being substantially the same as those existing here.

In the Wade case the Court of Appeal had denied the plaintiff compensation on finding that he was no longer disabled. Within the time allowed by law he applied for a rehearing. Thereafter, the plaintiff obtained certain medical evidence which, had it been presented earlier and timely, might well have changed the result and caused judgment to be rendered in his favor.

To a supplemental application for a rehearing filed in the Court of Appeal plaintiff Wade attached the medical report and prayed for a remand of the case so that the new evidence could be introduced and considered. The application for a rehearing was denied, and we granted certiorari.

In the written reasons for our judgment in the Wade case we pointed out that the Court of Appeal had acted properly in not considering the supplemental application seeking a remand, because it was filed in that court too late. But we held that in the interest of justice we should remand the case to permit introduction and considera-

tion of the new evidence. It was so remanded.

To all intents and purposes the same circumstances exist here, the only difference (which we consider immaterial) being that in the Wade case the plaintiff made an untimely, and therefore ineffective, effort to have the Court of Appeal remand the case before applying to this court for such relief. Consequently, the instant cause will be remanded to the district court for the introduction of the testimony of Dr. Kirgis so that it can be considered for whatever effect it might have in a determination of the question of the reason for plaintiff's disability. Moreover, on such remand, the plaintiff shall be permitted to establish, if she can, a causal connection between her disability and the traumatic experiences alleged to have occurred in the course of her employment. Likewise, the defendant shall be allowed to introduce any pertinent rebuttal evidence. Thereafter, all of such evidence, together with that in the record as presently made up, shall be considered by the judge in redetermining the merits of this cause.

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside and the case is remanded to the district court to be proceeded with conformably with the views hereinabove expressed. Costs of the instant procceding in this

court shall be paid by the defendant. The assessment of all other costs shall await the final determination of the litigation.